UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

DERRICK L. OAKES,

        Plaintiff,        Case No. 1:09-cv-952

v.        Hon. Robert J. Jonker

KATHY DANHOF, *et al.*,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a former state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendants' motion for summary judgment (docket no. 29).

**I.    Plaintiff's complaint**

Plaintiff has named seven defendants in this action: Parole agents Kathy Danhof and Kathy Mayer; Parole Board members John Rubitschun, Adrian Green, and unknown party "James Doe"; Muskegon Parole Officer Deborah Visger; and "area manager" John Arnoldi.[1] Plaintiff sets forth the following allegations in his complaint.

Plaintiff states he was paroled on January 30, 2001, and placed under the supervision of Agent Danhof. Compl. at ¶ 7. At his second parole meeting, Agent Danhof requested plaintiff to take a series of polygraph examinations. *Id.* Plaintiff refused, but then took the examinations when Agent Danhof threatened to revoke his parole. *Id.* On November 2, 2001, Agent Mayer

---

[1] The court notes that Parole Agent Mayer has not appeared in this action and that plaintiff has not identified (or served) the unknown defendant James Doe.

became plaintiff's parole agent. *Id.* at ¶ 8. Two weeks before plaintiff's January 30, 2003 discharge date, Agent Mayer requested that plaintiff's parole be extended due to plaintiff's failure to pay the Parole Board ordered polygraph fees. *Id.* Parole Board members Rubitschun and Green approved Agent Mayer's request and extended plaintiff's parole until July 30, 2003. *Id.* at ¶ 9. Then, two weeks before the July 30th extension was to expire, Agent Mayer requested a second parole extension for plaintiff's failure "to complete [sic]" the polygraph fees. *Id.* at ¶ 10. Parole Board members Rubitschun and Doe approved Agent Mayer's request to extend the parole to December 1, 2008. *Id.* at ¶ 11.

Plaintiff alleged that it was not until June 2008, that he "realized his parole orders dated January 30, 2001 through January 30, 2003 did not include a <u>Parole Board ordered</u> special condition 1.10, requiring [plaintiff] to submit to the polygraph exams or bear the cost thereof <u>before being discharged off parole</u>." *Id.* at ¶ 12 (emphasis in original). Petitioner claims that defendants' actions violated his due process rights under the Fourteenth Amendment, because his "parole was extended twice based on a Parole Board order that did not exist, nor was [plaintiff] given the required notice of [an] added parole board ordered 1.10 [sic]." *Id.* at ¶ 14. Plaintiff further alleged that Parole Officer Visger "was made aware of this constitutional violation through the grievance appeal system" but failed to remedy the violation. *Id.* at ¶ 17. In addition, area manager Arnoldi answered the grievance at step, "neglecting to remedy the wrong." *Id.* at ¶ 18.

Plaintiff filed this action October 15, 2009. *See* docket no. 1. He seeks over $2 million in damages for the alleged denial of due process, for his alleged unlawful detention from January 30, 2003 through June 16 2009, and for defendants' failure to follow appropriate rules, policies and operating procedures.

## II. Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

3

could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Discussion

Defendants Danhof, Green Visger and Arnoldi move for summary judgment on the ground that plaintiff's complaint is barred by the applicable statute of limitations. The court agrees with defendants' assertion and would recommend summary judgment on that basis.[2] However, defendants are entitled to summary judgment on a separate ground, because plaintiff has no legal basis to bring this due process claim in the first instance.

A prisoner has no constitutional or inherent right to be released on parole before the expiration of the prisoner's sentence. *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*,

---

[2] On January 30, 2001, plaintiff signed his Parole Conditions, which included the following:

AGREEMENT OF PAROLE: I have read or heard the parole conditions and special conditions and have received a copy. I understand that failure to comply with any of the conditions or special conditions may result in revocation of parole and return to confinement. I understand and agree to comply with the parole conditions and special conditions.

*See* "Parole Conditions" (docket no. 30-11). On that same date, plaintiff acknowledged receipt of the following "Special Conditions of Parole":

1.10 YOU MUST COMPLETE A POLYGRAPH EXAMINATION AT YOUR OWN EXPENSE ADMINISTERED BY A POLYGRAPH EXAMINER AS DESIGNATED AND ORDERED BY YOUR PAROLE AGENT.

*See* "Special Conditions of Parole" (docket no. 30-12). The record reflects that plaintiff became aware of the polygraph examination requirement contained in Special Condition 1.10 when he acknowledged receipt of that special condition on January 30, 2001. The statute of limitations for a § 1983 claim in Michigan is three years, based upon Michigan's three-year statute of limitations for injury to a person or property, M.C.L. § 600.5805(10). *Chippewa Trading Company v. Cox*, 365 F.3d 538, 543 (6th Cir. 2004). Plaintiff filed this action on October 15, 2009, more than eight years after he acknowledged receipt of Special Condition 1.10 and more than five years after the statute of limitations expired. *See* docket no. 1. Plaintiff has provided no basis to toll the statute of limitations due to his discovery of Special Condition 1.10 in June 2008. The court does not adopt plaintiff's claim that he was unaware of the special condition until June 2008. *See Scott*, 550 U.S. at 380 (court not required to adopt a non-movant's version of the facts which is "blatantly contradicted by the record"). Accordingly, plaintiff's action is barred by the three-year statute of limitations.

4

442 U.S. 1, 7 (1979). The state is therefore free to institute parole systems, but it has no duty to do so. *Id.*; *see Rose v. Haskins*, 388 F.2d 91, 93 (6th Cir. 1968). Michigan courts describe parole as "a conditional release," the purpose of which "is to keep a prisoner in legal custody while permitting him to live beyond the prison enclosure so that he may have an opportunity to show that he can refrain from committing crime." *People v. Gregorczyk*, 178 Mich. App. 1, 11, 443 N.W.2d 816 (1989), quoting *In re Eddinger*, 236 Mich. 668, 670, 211 N.W. 54 (1926).

Plaintiff does not have a federal due process claim arising from the MDOC's failure to grant parole at any time prior to the expiration of his maximum sentence. It is well established that Michigan prisoners do not have a liberty interest in obtaining early release on parole. *Caldwell v. McNutt*, 158 Fed. Appx. 739, 741 (6th Cir. 2006); *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994). Nor do prisoners have a liberty interest in the state parole authorities following parole procedures. *Sweeton*, 27 F.3d at 1164-65 (6th Cir. 1994) ("[t]he parole authorities of the State of Michigan may have been required to follow their own procedural statutes and regulations on parole . . . as a matter of state law, but there is not now any viable legal theory by which Michigan state authorities are required to follow such procedural rules as a matter of *federal* due process"). Accordingly, defendants are entitled to summary judgment.

## IV. Recommendation

For these reasons, I respectfully recommend that defendants' motion for summary judgment (docket no. 29) be **GRANTED** and this action be dismissed.

Dated: June 22, 2010　　　　　　　　　　　　/s/ Hugh W. Brenneman, Jr.
　　　　　　　　　　　　　　　　　　　　　　HUGH W. BRENNEMAN, JR.
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).